IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

NOELLE HANRAHAN, *et al.*,

        Plaintiffs,           CASE NO. 2:13-cv-1212
                                            CHIEF JUDGE EDMUND A. SARGUS, JR.
   v.                                  MAGISTRATE JUDGE ELIZABETH P. DEAVERS

GARY C. MOHR, *et. al.*,

        Defendants.

## OPINION AND ORDER

Defendants Gary Mohr and JoEllen Smith, central office staff at the Ohio Department of Rehabilitation and Correction ("ODRC"), bring this Motion for Judgment on the Pleadings. (ECF No. 11.) For the reasons that follow, Defendants' Motion is **DENIED**.

### I.

Plaintiffs Siddique Abdullah Hasan, Gregory Curry, Keith LaMar, Jason Robb, and George Skatzes ("Prisoner Plaintiffs") are prisoners who were convicted of crimes committed during the Lucasville prison riot. Plaintiffs Noelle Hanrahan, Christopher Hedges, Derrick Jones, and James Ridgeway ("Media Plaintiffs") unsuccessfully sought interviews with Prisoner Plaintiffs. Defendant Gary Mohr is the Director of the ODRC, and defendant JoEllen Smith is the Communications Chief of the ODRC ("Defendants"). Defendants have denied all members of the press face-to-face media access to prisoners convicted of crimes committed during the April 1993 Lucasville prison riot.

The Lucasville prison riot took place in April 1993 when prisoners overpowered a prison

1

guard and took his keys, which gave the prisoners access to a portion of the prison. Prisoners began to attack and overpower the remaining guards in that portion of the prison. The prisoners gained complete control over the L-block of the prison and held a dozen guards hostage. The standoff between these prisoners and the outside world lasted eleven days. During those eleven days, one guard and nine prisoners were murdered and many more were injured.

In the aftermath, journalists sought interviews with the prisoner leaders of the riot. Prison officials denied an interview request for a non-plaintiff journalist from the *Columbus Dispatch* to interview Hasan in February 2003. (Compl., ¶ 19(a), ECF No. 1.) Officials again denied a non-plaintiff journalist's interview request with Prisoner Plaintiff Hasan in June 2005 because "[i]nterviews with general population inmates are discretionary by policy and we do not grant interviews with Level 5 (security level of [Hasan]) inmates." (*Id.* at ¶ 19(b).) Officials also indicated that they "also limit any interview to discussions about their offense or a topic not related to prison policy or procedure." (*Id.*)

Warden Houk denied another non-plaintiff journalist's interview request with Prisoner Plaintiffs Hasan and Robb in November 2006 because "[o]ur research of your background leads us to believe that your visit with the inmates mentioned above, is for research purposes relating to your play 'Lucasville: The Untold Story of a Prison Uprising'. We will not facilitate any media, visit, or research opportunity, with the aforementioned inmates, due to their security level." (*Id.* at ¶ 19c.)

In February 2013, Defendant Smith denied a request by Media Plaintiff Hanrahan to interview Prisoner Plaintiffs Curry, Hasan, LaMar, Robb, and Skatzes because "[w]e base our decisions on inmate interviews on a number of different screening criteria, including the overall

2

safe operation of the facility and potential impact on crime victims, etc." (*Id.* at ¶ 20(a).) Defendant Smith denied Media Plaintiff Jones's request to interview Skates, Curry, LaMar, Hasan, and Robb later in February 2013 because "[i]nmates who are classified as Level 5 inmates are not eligible for interviews. In addition, [w]e base our decisions on inmate interviews on a number of different screening criteria, including the overall safe operation of the facility and potential impact on crime victims, etc." (*Id.* at ¶ 20(b).) Officials denied similar requests for interviews with Prisoner Plaintiffs three times in March 2013 and three times in April 2013, citing varying reasons, including that ODRC did not permit Level 5 inmates to be interviewed.[1] (*Id.*)

According to the Complaint, although they have always denied in-person interviews of the Prisoner Plaintiffs, prison officials have permitted many media requests for face-to-face interviews of other prisoners who are on death row. (*Id.* at ¶ 21.) Some of these prisoners described conditions on death row. Moreover, Plaintiffs contend that ODRC permitted one filmmaker to interview and film prisoners who were confined in Ohio's super-max security prison at the highest level of security (now Level 5). (*Id.* at ¶¶ 40, 61(b).)

The Ohio Administrative Code permits media visits subject to time, place and manner restrictions.[2] ODRC, however, has two separate media policies. Policy 01-COM-09 applies to

---

[1] Prisoner Plaintiff George Skatzes is not on Level 5 Security and is in general population at Chillicothe Correctional Institution. (Compl., at ¶¶ 16, 20(i).)
[2] Section 5120-9-16 of the Ohio Administrative Code is captioned "News media visits." Administrative Rule 5120-9-16, effective April 1, 2009, provides in full:

> (A) It is the policy of the department of rehabilitation and correction to permit visits by representatives of the news media to correctional institutions, when approved by the managing officer of the particular institution or his designee.

3

prisoners who are not under sentence of death and thus applies to Prisoner Plaintiff Curry. Policy 01-COM-13 applies to prisoners on death row. That policy distinguishes between death row prisoners who have a scheduled execution date and those who do not. The policy for prisoners who do not have a scheduled execution date apply to the remaining Prisoner Plaintiffs: Hasan, LaMar, Robb, and Skatzes.

Plaintiffs filed this action in December 2013. (Complaint, ECF No. 1.) They assert that Defendants engaged in content-based discrimination and unreasonable restrictions on public access in violation of the First and Fourteenth Amendments. Plaintiffs also contend that the Defendants violated Due Process and Equal Protection guarantees in the Fourteenth Amendment

---

- (B) The managing officer or his designee may place reasonable restrictions on the number of reporters allowed in the institution at any one time and on the duration of their visits.

- (C) Arrangements for the use of photographic, recording or broadcast equipment or for interviews must be made in advance.

    - (1) Pictures or recorded interviews of specific inmates may be taken only after securing clearance from the managing officer or his designee and only after the inmate to be photographed has expressed his approval by signing the inmate consent form.

    - (2) The managing officer or his designee may place reasonable restrictions on the frequency, length, and starting time of personal interviews. The institution will visually monitor such interviews to assure the reporters' safety.

- (D) If an institution is placed under a state of emergency, representatives of the news media will be allowed access only to those areas that are designated by the managing officer or his designee. During the existence of a state of emergency, the director or his designee shall inform the news media of the situation within the institution as releasable information becomes available.

Ohio Admin. Code 5120-9-16.

4

because there is no rational basis for the interview restrictions. Plaintiffs bring these claims under 42 U.S.C. § 1983.

Defendants filed their Motion for Judgment on the Pleadings in March 2014. (ECF No. 11.) Defendants seek to dismiss the Media Plaintiffs' claims for two reasons. Defendants first argue that the Media Plaintiffs lack standing because they have not suffered a particularized injury. Defendants also contend that the Media Plaintiffs fail to state a claim because the United States Constitution does not provide a First or Fourteenth Amendment right to face-to-face interviews with Prisoner Plaintiffs. Defendants argue that the Prisoner Plaintiffs' claims fail for two reasons. First, Defendants assert that the statute of limitations bars the claims. Second, they contend that the claims are barred because the prisoners failed to exhaust their state administrative remedies. This Court addresses these contentions below, turning first to Defendants' challenge to the Media Plaintiffs' claims followed by an analysis of Defendants' opposition to the Prisoner Plaintiffs' causes of action.

## II.

### A. Media Plaintiffs

#### 1. Standing

Defendants argue that Media Plaintiffs have no standing to bring their claims because they have not suffered a particularized injury, "namely an injury that is distinct from that suffered by the public at large." (Defs.' Mot., at 5, ECF No. 11.) Standing is a jurisdictional matter and is a threshold question to be resolved by the Court before it may address any substantive issues. *Planned Parenthood Ass'n v. City of Cincinnati*, 822 F.2d 1390, 1394 (6th

Cir. 1987). Rule 12(b)(1) provides for dismissal for lack of jurisdiction over the subject matter. Fed. R. Civ. P. 12(b)(1). Motions under Rule 12(b)(1) fall into two general categories: facial attacks and factual attacks. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). A facial attack challenges the pleading itself. In considering this type of attack, the Court must take all material allegations in the complaint as true, and construe them in light most favorable to the non-moving party. *Id.* Where subject matter jurisdiction is factually attacked, the plaintiff bears the burden of proving jurisdiction to survive the motion, and "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* In a factual attack of subject matter jurisdiction, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.*

While the Defendants do not distinguish, the Court assumes that Defendants are making a facial attack on the Media Plaintiffs' Complaint. This is so because the Defendants do not challenge any of the facts that would purport to establish subject matter jurisdiction and offer no extrinsic evidence for the Court to weigh in this regard. Defendants merely contend that Plaintiffs lack standing because they do not have any injury over and above any injury that the public has suffered.

Article III of the Constitution limits the jurisdiction of federal courts to an actual "case or controversy." Article III standing requires a party bringing a case in federal court to establish each of the following elements: (1) an injury in fact, which is a protected interest that is concrete, particularized, and actual; (2) a causal connection between the defendant's conduct and the injury; and (3) a likelihood that the injury can be addressed with a favorable decision. *Lujan*

6

*v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561 (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)). Defendants contend that the Media Plaintiffs cannot meet the first prong of the analysis because they purportedly have not suffered a particularized injury.

A plaintiff does not fulfill the injury prong of the analysis when he or she raises "only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large." *Lujan,* 504 U.S. at 573-74. Here, however, the Media Defendants contend that that they have suffered a concrete injury because their ability to gather the news has been hampered.

The Court of Appeals for the Sixth Circuit has recognized the constitutional right for members of the press to gather the news. *CBS Inc. v. Young*, 522 F.2d 234, 237 (6th Cir. 1975) (finding that media satisfied the particularized injury-in-fact requirement of standing when its "ability to gather the news" about a pending trial was "directly impaired or curtailed.") Furthermore, the Court of Appeals for the District of Columbus has observed that when the media asserts that they have been denied the right to coverage and the right to that coverage is a constitutional right, a media plaintiff has properly pled injury-in-fact. *Flynt v. Rumsfeld*, 355 F.3d 697, 702 (D.C. Cir. 2004) (finding injury-in-fact because media plaintiffs alleged that they were denied the right to be embedded with U.S. troops in combat and alleged that their right to such coverage is a constitutional right). When applying the standing analysis, a court must "assume the validity of appellants' allegation of injury, although having crossed that threshold, [the court] may ultimately determine it to be invalid." *Id.*

Here, Media Plaintiffs allege that Defendants' policies of prohibiting access to Prisoner Plaintiffs have injured them by impairing their ability to gather the news. (Pls.' Response at 12, ECF No. 13.) Defendants maintain that the Media Plaintiffs lack standing because they have no constitutional right of special access to information which is not available to the public generally. But, this is an argument going to the merits of Plaintiffs' claims. Defendants have conflated the issue of standing with the issue of whether the Media Plaintiffs' claims have merit. The cases upon which Defendants rely go to the ultimate merits of the Media Plaintiffs' claims, not the issue of standing. Defendants cite *Houchins v. KQED, Inc.*, 438 U.S. 1 (1978); *Pell v. Procunier*, 417 U.S. 817 (1974); and *Saxbe v. Washington Post Co.*, 417 U.S. 843 (1974). In these cases, the media plaintiffs litigated the merits of their claims through the entire judicial process. They say nothing on the matter of standing.

Defendants do not challenge the last two elements of standing: the causal connection between the injury and Defendant's conduct, and the redressability of the injury. This Court finds that Media Plaintiffs have adequately pled particularized injury. Accordingly, Defendants' motion to dismiss their claims for lack of standing is **DENIED**.

2. **Failure to State a Claim**

Defendants move for judgment on the pleadings with respect to the Media Plaintiff's substantive claims. Rule 12(c) of the Federal Rules of Civil Procedure allows a party to "move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The Court evaluates a motion filed under Rule 12(c) using the same standard as a Rule 12(b)(6) motion to dismiss. *See Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011). To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must satisfy the basic

8

federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted).

In order to state a claim under § 1983, the Media Plaintiffs must plead two elements: "(1) deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (citing *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 463 (6th Cir. 2006)). Here, Defendants contend that the Media Plaintiffs have failed to identify any

specific constitutional right or federal law that the State has allegedly infringed. Thus, they seek dismissal of all of the Media Plaintiffs' claims.

The Media Plaintiffs maintain that they have a First and Fourteenth Amendment right to face-to-face interviews with the Prisoner Plaintiffs. (Compl. ¶ 1.) They contend that they are acting as agents of the public and submit that face-to-face interviews are essential to adequate and fair reporting. The Media Plaintiffs assert that no alternative practice would fully accommodate their constitutional rights because this form of interview has unique communicative properties. (*Id*. at ¶¶ 66–67.) The Media Plaintiffs conclude that ODRC's refusal to allow the press to conduct these interviews with the leaders of the Lucasville riots violates the First and Fourteenth Amendments. (*Id*. at ¶¶ 48, 68.)

In *Saxbe v. Washington Post Co.*, 417 U.S. 843 (1974), The Washington Post and one of its reporters brought an action to challenge the constitutionality of regulations prohibiting press interviews with prisoners. The Court discussed the developed record, which included evidence demonstrating that prison officials feared inmates who were publicized because of their repeated contact with the press would gain a disproportionate degree of notoriety and would become a substantial disciplinary problem within the institution. *Id*. at 848-49. The Court nevertheless held as follows:

> In this case, however, it is unnecessary to engage in any delicate balancing of such penal considerations against the legitimate demands of the First Amendment. For it is apparent that the sole limitation imposed on newsgathering by Policy Statement 1220.1A is no more than a particularized application of the general rule that nobody may enter the prison and designate an inmate whom he would like to visit, unless the prospective visitor is a lawyer, clergyman, relative, or friend of that inmate. . . .
>
> We find this case constitutionally indistinguishable from *Pell v. Procunier*, 417

> U.S. 817 (1974), and thus fully controlled by the holding in that case. "(N)ewsmen have no constitutional right of access to prisons or their inmates beyond that afforded the general public." *Id.* at 834. The proposition "that the Constitution imposes upon government the affirmative duty to make available to journalists sources of information not available to members of the public generally . . . finds no support in the words of the Constitution or in any decision of this Court." *Id.* at 834-35. Thus, since Policy Statement 1220.1A "does not deny the press access to sources of information available to members of the general public," *id.*, at 835, we hold that it does not abridge the freedom that the First Amendment guarantees.

*Saxbe*, 417 U.S. at 849-50.

This language from *Saxbe* would seem to end the analysis. Following the decision, however, a divided Supreme Court decided *Houchins v. KQED, Inc.*, 438 U.S. 1 (1978), which narrowed the holding in *Saxbe*. With two of the nine justices taking no part in the case, three justices vacated an injunction enjoining a county sheriff from denying a television news team access to a jail in which an inmate's suicide had occurred. A fourth jurist, Justice Stewart, concurred in the result that vacated the injunction, but noted that the media plaintiffs were entitled to more limited injunctive relief. Three dissenting justices would have affirmed.

As the Supreme Court has held, "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193 (1977) (citing *Gregg v. Georgia*, 428 U.S. 153, 169 n. 15 (1976)).[3]

---

[3] In this case, Justice Stewart and the dissenting Justices all believed that at least some measure of injunctive relief in favor of the media plaintiffs was warranted.

11

In *Houchins*, the concurring opinion of Justice Stewart therefore provides the holding. Justice Stewart wrote:

> That the First Amendment speaks separately of freedom of speech and freedom of the press is no constitutional accident, but an acknowledgment of the critical role played by the press in American society. The Constitution requires sensitivity to that role, and to the special needs of the press in performing it effectively. A person touring Santa Rita jail can grasp its reality with his own eyes and ears. But if a television reporter is to convey the jail's sights and sounds to those who cannot personally visit the place, he must use cameras and sound equipment. In short, terms of access that are reasonably imposed on individual members of the public may, if they impede effective reporting without sufficient justification, be unreasonable as applied to journalists who are there to convey to the general public what the visitors see.

In this regard, Justice Stewart adopted the dissenting justices' interpretation of *Pell*. In *Pell*, the prison facilities provided "substantial press and public access to the prison." *Houchins*, 438 U.S. at 25.

At the pleading stage, this Court cannot determine without a record if the "terms of access are reasonably imposed" or if the prisons at issue provide "substantial press and public access to the prison." *Id.* Defendants' Motion for Judgment on the Pleadings as to the Media Plaintiffs' claims under § 1983 is therefore **DENIED**.

B. **Prisoner Plaintiffs**

  1. **Statute of Limitations**

Defendants maintain that Prisoner Plaintiffs' claims are time-barred under Ohio Revised Code § 2305.10. In support of their contention, Defendants rely upon Plaintiffs' allegations of prior instances of media access denial to conclude that "the Prisoner Plaintiffs had reason to

12

know of the injury of which they now complain" for more than two years before they filed the Complaint. (Defs.' Mot. 12, ECF No. 11.) More specifically, Defendants reason as follows:

> Given the allegations in the Complaint, it is clear that the Prisoner Plaintiffs' claims accrued no later than November 6, 2006. Indeed, as early as February 19, 2003, the Prisoner Plaintiffs knew or should have known that no inmates convicted of riot crimes would be permitted to speak to the media when their fellow plaintiff, Hasan, was so advised. (Compl. ¶ 19(a)). Equally important, a similar media request to interview Hasan was again flatly rejected on June 20, 2005. (Compl. ¶ 19(b)). And somewhat more recently, on November 6, 2006, a media request to visit both Hasan and Robb was likewise refused, once again giving the Prisoner Plaintiffs reason to know that for them, media access had been and would continue to be denied. (Compl. ¶ 19(c)) ("We will not facilitate any media visit, or research opportunity, with the aforementioned inmates, due to their security level.")

(*Id.* at 11.) Plaintiffs counter that the November 6, 2006 letter upon which Defendants rely does not demonstrate that Plaintiffs knew or should have known of Defendants' policy that no inmates convicted of riot crimes could have media access.

The parties do not dispute that Ohio Revised Code § 2305.10 sets forth the operative, two-year limitations period. The two-year period "runs from 'when the plaintiff knows or has reason to know of the injury which is the basis' of the claim." *Holson v. Good*, 579 F. App'x 363, 366 (6th Cir. 2014) (quoting *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 856 (6th Cir. 2003)).

The Court concludes that the allegations set forth in Plaintiff's Complaint do not, contrary to Defendants' assertions, make clear that the Prisoner Plaintiffs knew or should have known that "no inmates convicted of riot crimes would be permitted to speak to the media" in November 2006. To the contrary, the allegations upon which Defendants rely mention only two of the Prisoner Plaintiffs, Plaintiffs Hasan and Robb, and reflect that Defendants denied a request

13

for media access to Hasan and Robb in 2006 "due to their security level." (Compl. ¶ 19.) As Plaintiffs point out, this rationale is distinguishable from the other varying rationales Plaintiffs allege that Defendants offered to explain their denials of media-access requests made *during* the limitations period. Indeed, it does not appear that the security-level rationale Defendants offered in 2006 would have even applied to Prisoner Plaintiff Skatzes. (*See* Compl. ¶ 20(h) (alleging that Skatzes has a lower security level). Plaintiffs also correctly point out that the security-level rationale leaves open the possibility that even Plaintiffs Hasan and Robb could, in the future, be granted media access should their security level change. Thus, given that Plaintiffs allege that Defendants denied media-access requests from each of the Prisoner Plaintiffs within the limitations period, the finds Defendants' request to dismiss Prisoner Plaintiffs' claims as time barred unavailing. Defendants' Motion is **DENIED** in this respect.

2.  **Exhaustion**

Defendants posit that Prisoner Plaintiffs' claims are barred because they failed to exhaust their administrative remedies prior to filing this action. According to Defendants, "Prisoner Plaintiffs admit in the Complaint that they failed to exhaust the inmate grievance procedure against Defendants before filing this case." (Defs.' Mot. 13, ECF No. 11.)

The Court agrees with Plaintiffs that consideration of whether Prisoner Plaintiffs properly exhausted their administrative remedies is premature. The Prison Litigation Reform Act ("PLRA") exhaustion provision, titled "Suits by prisoners," provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Under §

1997e(a), prisoners are required to exhaust "[a]ll available remedies" prior to instituting a § 1983 action. *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (internal quotation marks and citations omitted). "Failure to exhaust is an affirmative defense under the PLRA, and inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007); *see also Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012). Defendants bear the burden of proof on the affirmative defense of exhaustion. *Napier v. Laurel County, Ky.*, 636 F.3d 218, 225 (6th Cir. 2011).

Contrary to Defendants' assertion, the allegations set forth in Plaintiffs' Complaint do not constitute an admission that Prisoner Plaintiffs failed to exhaust their administrative remedies. Defendants cite paragraphs six, twelve, thirteen, twenty-nine, thirty-one, and thirty-two. In these paragraphs, Plaintiffs allege that Prisoner Plaintiffs Hasan and Curry used the grievance procedure and obtained decisions from the Chief Inspector. In paragraph twenty-nine, Plaintiffs allege that Prisoner Plaintiffs Curry, Hasan, LaMar, and Robb submitted informal complaints to the Warden. These allegations do not rise to the level of an admission of non-exhaustion. And although these allegations do not affirmatively establish that Prisoner Plaintiffs properly exhausted their administrative remedies, as set forth above, Plaintiffs were not required to affirmatively plead exhaustion in their Complaint. Accordingly, Defendants' request to dismiss Prisoner Plaintiffs claims for failure to exhaust administrative remedies is not well taken. Defendants' Motion is therefore **DENIED** as to this issue.

### III.

Based on the foregoing, Defendants' Motion for Judgment on the Pleadings is **DENIED**. (ECF No. 11.)

**IT IS SO ORDERED.**

3-31-2015
**DATE**

**EDMUND A. SARGUS, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**