UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

NOELLE HANRAHAN, et al.,

    Plaintiffs,

v.

GARY C. MOHR, et al.,

    Defendants.

Case No. 2:13-cv-1212
**CHIEF JUDGE EDMUND A. SARGUS, JR.**
Magistrate Judge Preston Deavers

## OPINION AND ORDER

This matter is before the Court on Plaintiffs' Motion for Reconsideration (ECF No. 40-1), Motion to Compel (ECF No. 51), and Motion to Strike the Jury Demand of the Defendants (ECF No. 46.) For the reasons that follow, Plaintiffs' Motion for Reconsideration and Motion to Compel are **DENIED** and their Motion to Strike the Jury Demand is **GRANTED**.

## I. BACKGROUND

The facts of this case have been more fully set out in the Court's Opinion & Order granting in part and denying in part Defendants' Motion for Summary Judgment. (Summary Judgment Opinion & Order ("Summ. J. Op."), ECF No. 37.) The facts relevant to the motions at issue will be briefly summarized.

Plaintiffs are prisoners who participated in the Lucasville prison riot ("Prisoner Plaintiffs") and members of the media ("Media Plaintiffs") who sought to conduct face-to-face and video recorded interviews with Prisoner Plaintiffs, but were denied access by Defendants, Gary Mohr, the Director of the Ohio Department of Rehabilitation & Correction ("ODRC'), and JoEllen Smith, Communications Chief for ODRC ("Defendants"). Plaintiffs assert violations of their First and Fourteenth Amendment rights to media access and seek declaratory and injunctive

1

relief prohibiting Defendants from further denying them in-person interviews. (Complaint ("Compl.") ¶ 1–2, ECF No. 1.)

Plaintiffs seek reconsideration of the Court's decision granting in part Defendants' Motion for Summary Judgment (ECF No. 32) against Prisoner Plaintiffs Curry, Hasan, LaMar, and Robb holding that they were reasonably denied interviews because of their restricted population status.[1] (Summ. J. Op.) The Court held that Defendants had applied a reasonable and content-neutral policy in denying interviews with these plaintiffs and that there was no evidence Defendants had treated Prisoner Plaintiffs differently than other restricted population inmates.

At the time Defendants denied Plaintiffs' interview requests, all Ohio inmates were assigned a numerical security classification from level 1 through level 5. *Wilkinson v. Austin*, 545 U.S. 209, 215 (2005). Inmates with levels 1, 2, and 3 classifications were considered part of the general population and inmates with levels 4 and 5 classifications were in the restricted population. (Inmate Security Classification Levels 1 through 4, Number 53-CLS-01, January 2, 2013, Defs. Ex. B at 168–69, ECF No. 32-2.) Level 5 was defined as a "security level for inmates who commit or lead others to commit violent, disruptive, predatory, riotous actions, or who otherwise pose a serious threat to the security of the institution as set forth in the established Level 5 criteria." (*Id.* at 168–67.) Prisoner Plaintiffs Gregory Curry, Siddique Abdullah Hasan, Keith LaMar, and Jason Robb, were classified as Level 5 Security inmates and thus in the restricted population when they were denied in-person interviews. (Compl. ¶¶ 12–15.)

Plaintiffs allege that the ODRC updated its security inmate classification policies on February 5, 2017, just six days after Defendants filed their motion for summary judgment on January 30, 2017. Plaintiffs argue that in adopting the new policies, "Defendants materially

---

[1] The Court denied summary judgment on the claims of Prisoner Plaintiff George Skatzes, who was classified in the general population but still denied an in-person interview whereas other general population inmates were allowed in-person interviews.

2

altered the definition of Restricted Population in such a way as to eliminate Level 5 and exclude Plaintiffs Hasan, Lamar and Robb." (Plaintiffs' Motion for Reconsideration ("Mot. to Reconsider") at 2, ECF No. 40-1.) Plaintiffs contend that under the new policies, Prisoner Plaintiffs Hasan, LaMar, and Robb should now be classified in the general population, but that they continue to be denied in-person interviews with Media Plaintiffs. (*Id.*) Plaintiffs allege that in granting summary judgment, the Court relied upon the outdated policies in its analysis and therefore should reconsider its decision in light of the new policies.

Plaintiffs filed their Motion for Reconsideration as part of an omnibus motion asking the Court to lift the stay currently imposed in this case, continue the scheduled mediation, grant leave to file the instant motion, and permit limited discovery with respect to the motion for reconsideration. (Omnibus Motion, ECF No. 40.) The Court denied Plaintiffs' request to lift the stay or continue mediation and held the remainder of the motion in abeyance until mediation was held on June 28, 2017. (ECF No. 43.) The parties reached impasse at mediation and were unable to settle the matter. The Court thereafter allowed Plaintiffs to request discovery limited to the Motion for Reconsideration and file a reply in support of its motion. (ECF No. 44.)

On July 31, 2017, Plaintiffs filed a Reply Brief in Support of their Motion for Reconsideration. (ECF No. 50.) However, a week later, Plaintiffs filed a Motion to Compel and Supplement Their Reply Brief seeking additional discovery from Defendants regarding the motion for reconsideration. (ECF No. 51.) Given that Plaintiffs' motion to compel concerned a motion already ripe for consideration, the Court ordered expedited briefing on the motion to compel. (ECF No. 52.) The Defendant submitted a response in opposition (ECF No. 53) to which Plaintiffs have replied (ECF No. 54).

Plaintiffs have also filed a Motion to Strike the Jury Demand of the Defendants on the

ground that there is no right to a jury trial in a Section 1983 case where the only relief sought is equitable. (ECF No. 46.) Defendants have filed a Response in Opposition (ECF No. 47), to which Plaintiffs have filed a Reply in Support (ECF No. 48).

## II. MOTION FOR RECONSIDERATION

### A. Standard

Federal Rule of Civil Procedure 59(e) allows district courts to correct their own errors, "sparing the parties and appellate courts the burden of unnecessary appellate proceedings." *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008). The decision of whether to grant relief under Rule 59(e) is left to the district court's sound discretion. *In re Ford Motor Co. Securities Litigation, Class Action*, 381 F.3d 563, 573 (6th Cir. 2004). Such a motion will generally be granted only if the district court made a clear error of law, if there is an intervening change in the controlling law, or if granting the motion will prevent manifest injustice. *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). A Rule 59(e) motion is not properly used as a vehicle to re-hash old arguments or to advance positions that could have been argued earlier, but were not. *Sault Ste. Marie Tribe of Indian Tribes v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). "Neither should it be used as a vehicle for submitting evidence which in the exercise of reasonable diligence could have been submitted before." *Frontera v. City of Columbus*, No. 2:06-CV-1046, 2009 WL 2898555, at *2 (S.D. Ohio Sept. 8, 2009), *aff'd sub nom. Frontera v. City of Columbus Div. of Police*, 395 F. App'x 191 (6th Cir. 2010).

### B. Analysis

Plaintiffs ask the Court to reconsider the portion of its decision granting summary judgment to Defendants on the claims of Prisoner Plaintiffs Curry, Hasan, LaMar, and Robb. (Summ. J. Op., ECF No. 37.) Defendants had argued in their motion for summary judgment that

4

the denial of in-person interviews to Plaintiffs was consistent with ODRC Media Policies 01-COM-13 and 01-COM-09, which restrict media access to inmates classified in the restricted population. Policy 53-CLS-01 previously defined the general and restricted populations based on an inmate's security classification—the general population consisting of security levels 1, 2, 3, and restricted population made up of 4 and 5. The Court found no evidence that Curry, Hasan, LaMar, or Robb—designated at security level 5 and thus in the restricted population—had been treated differently than other restricted population inmates. The Court held that Defendants did not violate plaintiffs' First and Fourteenth Amendment rights because the policies upon which they relied in denying the interviews were content-neutral and applied uniformly to similarly situated inmates. (*Id.* at 11–12.)

On February 5, 2017, six day after Defendants filed their Motion for Summary Judgment, the ODRC enacted four new policies updating various security classifications and definitions. The new 53-CLS-01 policy now defines "General Population" as inmates with a security classification 1 through 4. (Policy 53-CLS-01, ECF No. 42-3.) The previous security level 5 is now divided into two categories entitled "Restrictive Housing" and "Extended Restrictive Housing." Restrictive Housing is defined as "Housing that separates an inmate from the general population and restricts the inmate to their cell twenty-two (22) hours or more per day." (Policy 53-CLS-04, ECF No. 42-1.) Extended Restrictive Housing ("ERH") is the same as Restrictive Housing but for a period of thirty days or longer. ERH is further broken down into sub-levels, so that level 4B is now ERH1, level 5A is ERH2, and level 5B is ERH3. (*Id.*)

Prisoner Plaintiffs Hasan, LaMar, and Robb were previously designated as Level 5A inmates and are therefore would now be classified as ERH2 inmates. Although, according to

5

Trevor Clark, Assistant Chief Counsel for ODRC, inmates Robb and Lamar will continue to be managed as ERH1 prisoners.[2] (Declaration of Trevor Clark ("Clark Decl.") ¶ 11, ECF No. 42-4.) Regardless of whether Prisoner Plaintiffs are ERH1 or ERH2 prisoners, both are in the restricted population subject to the same media prohibitions. Plaintiffs, however, argue that based on their reading of the new Restrictive Housing definition, Hasan, LaMar, and Robb should considered general population inmates because they spend less than 22 hours inside their cells. (Declaration of Keith Lamar at ¶¶ 6–7, ECF No. 40-5; Declaration of Siddique Abdullah Hasan at ¶ 6, ECF No. 40-6; Declaration of Jason Robb at ¶ 4, ECF No. 40-7.) According to Plaintiffs, the new policies fundamentally shift the way ODRC classifies prisoners from a system based on a prisoner's particular security level to now looking at the extent of the prisoner's privileges—i.e. how much time he spends out of his cell a day. They posit that, based on their actual privileges, Prisoner Plaintiffs should be classified as Level 4 inmates and therefore in the general population.

Despite Plaintiffs' belief that they have been improperly classified, Defendants maintain that Prisoner Plaintiffs Robb, Lamar are currently classified as either ERH1 or ERH2 inmates. (Defendants' Response to Mot. to Reconsider ("Defs. Resp.") at 5, ECF No. 42; Clark Decl. ¶ 11.) According to Defendants, "[f]unctionally, there is no difference between a Restricted Population Level 5A and an ERH2 security classification." (Defs. Resp. at 4.) Inmates are classified as ERH2, like previous Level 5A inmates, if "[t]he inmate has led, organized, participated in or incited a serious disturbance or riot that resulted in the taking of a hostage, significant property damage, physical harm or loss of life." (Policy 53-CLS-04.) Defendants insist that "ODRC's policy revisions will have no effect whatsoever on Plaintiffs' eligibility for media access. To the contrary, the new policies merely substitute required ACA definitions for

---

[2] Whether Prisoner Plaintiffs are currently designated as ERH1 or ERH2 status, both qualify as extended restrictive housing designations subject to the same restrictions.

old terminology." (Defs. Resp. at 7.) They insist that "[t]he policy change is in name only." (*Id.* at 11.) Regarding the fact that Prisoner Plaintiffs may spend less than 22 hours a day in their cells, Defendants assert that other policies give prison staff flexibility to grant additional privileges beyond the restrictive housing definitions. (Policy 55-SPC-02, ECF No. 42-2.) Defendants maintain that Prisoner Plaintiffs have been treated no differently than their fellow ERH inmates in being denied in-person media interviews for security reasons, as before with their fellow Restricted Population inmates.

Ultimately whether or not Prisoner Plaintiffs are properly classified under the new ORDC policy—enacted more than three years after the Complaint in this case was filed—is not presently before the Court for consideration. The Court's decision on summary judgment that Defendants permissibly denied in-person interviews to Plaintiffs by invoking a content-neutral and uniformly-applied policies remains unchanged.

Plaintiffs concede that the previous policies were in effect when Defendants denied the interview requests alleged in the Complaint and on January 30, 2017 when the Motion for Summary Judgment was filed. (Mot. to Reconsider at 7.) Instead, Plaintiffs argue that Defendants' March 17, 2017 reply in support of their motion for summary judgment, after the new policies were adopted, continued to advance arguments based on the former policies and that Defendants failed to acknowledge the updated policies. (ECF No. 36.) Thus, Plaintiffs contend that the Court's analysis in granting summary judgment was based on underlying facts that no longer apply. They argue:

> The entire premise advanced by the Defendants in support of the prohibition on face-to-face interviews was that it was a security based system, designed to protect institutional order, and tied to the security classification scheme imposed on inmates for that reason. The entirety of their argument regarding content neutrality turned on the pivot of the policy applying generally to all inmates in Restricted Population.

(Mot. to Reconsider at 9.) Plaintiffs contend that the changes made to the policies were material and therefore warranted disclosure by Defendants to the Court.

Defendants dispute that they were compelled to notify the Court about the new policies since the updates were nominal in nature, and not substantive. They nevertheless argue that Plaintiffs had sufficient notice of the proposed policy revisions. Defendants assert that the Joint Committee on Agency Rule Review published their proposed revisions to the Administrative Rules and were therefore made available to the public in October of 2016. (Defs. Resp. at 8.) Defendants also state that they shared their plans for reforming the restrictive housing designation with the ACLU, Plaintiffs' former counsel, as early as September 2014. (*Id.* at 9.) Finally, they contend that changes to restrictive housing were also addressed on the prisoner media information station. (*Id.*) Defendants conclude that Plaintiffs should have been reasonably aware of the proposed policy changes.

Defendants further argue that "if Plaintiffs believed the Restrictive Housing policy revisions were material to whether they would be afforded on-camera media access, they could have incorporated the proposed changes into their response in opposition to Defendants' Motion for Summary Judgment." (*Id.* at 9.) Given that Plaintiffs should have known about the proposed policy changes, their choice to not mention them in their response constitutes "evidence which in the exercise of reasonable diligence could have been submitted before." *Frontera*, 2009 WL 2898555 at *2. As Defendants argue, Plaintiffs should be precluded from now raising the issue as a basis for reconsideration. The Court agrees.

Notwithstanding, the Court's decision on Defendants' Motion for Summary Judgment would be unchanged even if considering the updated policies. The key question before the Court at summary judgment was whether the policies Defendants allegedly relied upon in denying

8

interviews to Prisoner Plaintiffs were applied uniformly to other restricted population inmates, or whether they were used as pretext to deny interviews based on the expected content of the interviews. For instance, Plaintiffs allege in their Complaint that prison officials denied a journalist's interview request with Prisoner Plaintiff Hasan in June 2005 because "[i]nterviews with general population inmates are discretionary by policy and we do not grant interviews with Level 5 (security level of [Hasan]) inmates." (*Id.* ¶ 19(b).) Prisoner Plaintiffs Hasan and Robb were also denied interviews in November 2006, the prison stating that "[o]ur research of your background leads us to believe that your visit with the inmates mentioned above, is for research purposes relating to your play 'Lucasville: The Untold Story of a Prison Uprising'. We will not facilitate any media, visit, or research opportunity, with the aforementioned inmates, due to their security level." (Compl. ¶ 19(c).)

Plaintiffs' Complaint does not, however, allege that Defendants denied interviews to Prisoner Plaintiffs on the basis of the February 5, 2017 policy updates. Thus, the focus of the Court's inquiry at summary judgment was whether Defendants' stated reasons for denying the interviews alleged in the Complaint were permissibly based upon a content-neutral policy that was applied uniformly to similarly classified prisoners. The Court found that there was no evidence that other restricted population inmates were granted in-person interviews when Prisoner Plaintiffs were not. The fact that Defendants have since revised their policies moving forward does not affect that inquiry. Whether Defendants continue to apply the new policy uniformly to Prisoner Plaintiffs going forward is not an issue presently before the Court for consideration. Accordingly, Plaintiffs' Motion for Reconsideration is **DENIED**.

### III.  MOTION TO COMPEL

A week after submitting their Reply Brief in Support of Plaintiffs' Motion for

Reconsideration (ECF No. 50), Plaintiffs filed a Motion to Compel certain discovery Defendants allegedly refused to provide regarding the motion for reconsideration. (Plaintiffs' Motion to Compel ("Mot. to Compel"), ECF No. 51.) Plaintiffs seek time logs showing the amount of time each Prisoner Plaintiffs spends out of his cell, information regarding the ability of inmates to apply for presumptive release and work their way down to the general population, information on the number of other prisoners who retain statuses similar to Prisoner Plaintiffs, and information regarding the implementation of the new policies, among other requests. (Discovery Responses, ECF No. 51-1.)

Plaintiffs contend that Defendants failed to properly respond to their discovery requests and refused to respond to their interrogatories at all. Plaintiffs allege that Defendants primarily objected on the grounds that they had not agreed to produce additional discovery. For instance, Defendants answered Plaintiffs' first interrogatory as follows:

> ANSWER: Objection. Although fact discovery closed in this case on August 9, 2016 (Doc. 28), Defendants' counsel informally agreed at the June 28, 2017 mediation of this case to provide Plaintiffs with documents regarding whether those inmates confined in Restrictive Housing have continued to be confined in Restricted Population. At no time did Defendants agree, whether formally or informally, to continue discovery to allow for the submission of additional Interrogatories. Accordingly, no such documentation will be produced.

(Discovery Responses, ECF No. 51-1.) However, as Plaintiffs point out, the Court granted Plaintiffs' request to pursue additional discovery with respect to the motion for reconsideration and ordered Defendants to respond. (ECF No. 44.) Specifically, the Court indicated that "Plaintiffs may have until July 5, 2017, to request discovery limited to the Motion for Reconsideration. Defendants shall respond to those requests by July 12, 2017." (*Id.*) In this respect, Defendants' stated objection above was not proper.

Defendants, however, argue that Plaintiffs' motion to compel is procedurally defective

10

because it fails to include the required certification that Plaintiffs conferred in good faith with Defendants; that Plaintiffs in fact failed to confer in good faith because they canceled a Rule 30(b)(6) deposition scheduled with the ODRC representative who would have been able to provide the information sought; and because Plaintiffs' discovery requests ask for irrelevant information beyond whether the in-person media ban is still being neutrally applied to Prisoner Plaintiffs. (Defendants' Response to Mot. to Compel at 3, ECF No. 53.)

The Court need not decide the merits of the above arguments in light of its decision above denying Plaintiffs' Motion for Reconsideration. Even if Plaintiffs were entitled to the additional discovery they request, such discovery would not alter the Court's decision granting summary judgment to Defendants on the claims of Prisoner Plaintiffs Curry, Hasan, LaMar, and Robb. As stated above, whether the Defendants are implementing the new ODRC policies is not the issue presently before the Court. Plaintiffs' Motion to Compel (ECF No. 51) is therefore **DENIED**.

### IV. MOTION TO STRIKE

Plaintiffs also move to strike Defendants' demand for a jury trial. (Plaintiffs' Motion to Strike ("Mot. to Strike"), ECF No. 46.) On March 17, 2014, Defendants filed their Answer to the Complaint in which they demanded a jury trial. ("Defendants demand a trial by jury as to all claims for which a jury trial is available." Answer at 19, ECF No. 10.) On July 17, 2017, Plaintiffs filed their Motion to Strike, in which they argue that Defendants are not entitled to a jury trial because Plaintiffs only seek equitable relief in the form of a declaratory judgment, an injunction, statutory attorneys' fees, and such other relief as the Court might deem necessary, for which there is no right to a jury trial. (Mot. to Strike at 2.)

Defendants first argue that Plaintiffs' Motion as untimely pursuant to Federal Rule of

11

Civil Procedure 12(f). Rule 12(f) provides that "[t]he Court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter . . . "(1) on its own; or (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f). As Defendants argue, Plaintiffs' Motion to Strike is untimely because it was filed more than three years after Defendants made their jury demand on March 17, 2014, well beyond 21 days of being served with the pleading.

Plaintiffs' motion to strike would undoubtedly be untimely under Rule 12(f). However, Plaintiffs argue that they did not invoke Rule 12(f) in their motion. While perhaps incorrectly captioned as a "motion to strike," they argue their motion should be more properly considered as one brought under Federal Rule of Civil Procedure 39(a). The Court agrees. Rule 39(a) provides:

> When a jury trial has been demanded under Rule 38, the action must be designated on the docket as a jury action. The trial on all issues so demanded must be by jury unless:
>
> > (1) the parties or their attorneys file a stipulation to a nonjury trial or so stipulate on the record; or
> >
> > (2) the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial.

Fed. R. Civ. P. 39(a). Rule 39(a)(2), unlike a motion to strike under Rule 12(f), does not limit the time by which a party must object to a jury demand, and thus a motion to strike a jury may be filed anytime. *Police & Fire Ret. Sys. of City of Detroit v. Watkins*, No. 08-12582, 2013 WL 817929, at *1 (E.D. Mich. Mar. 5, 2013); *see also Burton v. Gen. Motors Corp.*, 1:95CV1054DFH–TAB, 2008 WL 3853329 at *7 (S.D. Ind. Aug.15, 2008) ("Parties have a great deal of latitude on the timing of motions to strike a jury demand, but the court has discretion to decide whether a motion to strike a jury demand is timely or too late.").

Although Plaintiffs waited for several years to object to Defendants' jury demand, their motion is not technically late. Plaintiffs filed their motion eleven days after the Court issued the Order Setting Trial Date and Settlement Conference in which the case was formally set for a jury trial. (ECF No. 45.) Perhaps owing to some confusion may have been the Court's Preliminary Pretrial Order issued on June 17, 2015, which stated that "There is not a jury demand." (ECF No. 26 at 1.) In any event, Defendants should not be permitted to proceed to a jury trial when there is no substantive right to one.

Defendants next argue that even if Plaintiffs' motion is timely, Defendants are still entitled to a jury trial. The Seventh Amendment provides, "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ." U.S. Const. amend. VII. The Supreme Court has interpreted "Suits at common law" to mean cases involving legal, as opposed to equitable, rights. *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989). The right to a jury trial is therefore preserved for legal claims, but not equitable claims. *Id.* In determining whether a case brings legal or equitable claims, Sixth Circuit has explained the inquiry as twofold:

> First, we compare the case at issue to "18th-century actions brought in the courts of England prior to the merger of the courts of law and equity." *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 565 (1990) (quoting *Tull v. United States*, 481 U.S. 412, 417 (1987)). If the case at issue was unknown in eighteenth century England, we must look to an analogous claim that existed then to guide us in deciding whether the present case is legal or equitable. *Id.* at 565–66. "Second, we examine the remedy sought and determine whether it is legal or equitable in nature." *Id.* at 565 (quoting *Tull*, 481 U.S. at 417–18). The second inquiry is more important. *Id.* (citing *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 (1989)). In fact, Justice Brennan persuasively advocated, to simplify and to add some order to the inquiry, excising the search for an historic analogue from the analysis, and instead focusing solely on the remedy sought. *Id.* at 574–81 (Brennan, J., concurring).

*Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 659 (6th Cir. 1996). Accordingly, "[t]he primary

13

consideration to be focused upon when determining whether a right to jury trial exists in a given situation is that of the nature of the relief sought." *Thomas v. Dayton Power & Light Co.*, 710 F. Supp. 1146, 1148 (S.D. Ohio 1988) (citing *Hildebrand v. Bd. of Trs. of Mich. State Univ.*, 607 F.2d 705, 708 (6th Cir.1979), *cert. denied*, 456 U.S. 910 (1982)).

"A key dividing line between law and equity has historically been that the former deals with money damages and the latter with injunctive relief." *Leary v. Daeschner*, 349 F.3d 888, 910 (6th Cir. 2003) (citing *Tull v. United States*, 481 U.S. 412, 417 (1987)). Whether a jury is proper is a question to be resolved on the pleadings, including defenses raised in the answer. 9 Wright, Miller & Kane, *Federal Practice & Procedure* § 2304 (3d ed. 2004). Specifically, "[t]here is no right to a jury trial in a § 1983 action in which only equitable relief is sought." Schwartz, Section 1983 Litigation, at 5 and n.29 (Federal Judicial Center, 3d ed. 2014) (citing *Wilson v. Bailey*, 934 F.2d 301, 306 (11th Cir. 1991)). While "the Seventh Amendment guarantees a right to a jury trial on the merits of an action seeking legal relief under § 1983," *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015) (citing *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687 (1999)) "that guarantee does not extend to claims for equitable relief." *Chao v. Metro Fitness, Inc.*, 2008 WL 2498105 at * 1 (S.D. Ohio, Jun. 17, 2008) (citing *Parsons v. Bedford, Breedlove & Robeson*, 28 U.S. 433, 446-47 (1830)).

Defendants argue that this case contains legal issues because Plaintiffs seek declaratory relief, which "may be legal or equitable depending on the basic nature of the underlying issues." (Defendants' Response to Mot. to Strike ("Defs. Resp. to Mot. to Strike") at 2, ECF No. 47 (quoting *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 661 (6th Cir. 1996)).) However, the Sixth Circuit in *Golden* also states that "[i]n actions seeking declaratory relief, the right to a jury trial is preserved only where it otherwise exists." *Id.* (citing *Robinson v. Brown*, 320 F.2d 503, 505 (6th

Cir. 1963) ("The inclusion of a claim for declaration of rights in the complaint did not, in our opinion, convert an equity case into an action at law.")). Consequently, "Seeking declaratory relief does not entitle one to a jury trial where the right to a jury trial does not otherwise exist." *Id.*

According to Defendants, the declaratory relief sought here is legal in nature because Defendants' affirmative defense raises a critical issue of fact to be determined—i.e. the safety and security of the prison if Plaintiff Skatzes is allowed an on-camera interview. (Defs. Resp. to Mot. to Strike at 2.) This argument, however, misconstrues the meaning of a legal claim as determined by the relief sought, i.e. monetary damages, with one that raises a question of fact. The mere existence of a disputed fact does not determine whether the claim alleged arises out of law or equity. As Plaintiffs note, this cannot be the case because courts routinely act as the finder of fact in a preliminary injunctive hearing, a purely equitable matter. (Mot. to Strike at 3.)

In support, Defendants cite two cases in which declaratory relief was sought but the action nevertheless proceeded to a jury trial. *See Massachusetts Mut. Life Ins. Co. v. Hardwick*, 118 F. Supp. 485 (E.D. Tenn. 1953) (declaratory judgment action for rescission of contract, traditionally equitable in nature, proceeded to a jury trial on the issue of mental incompetence, defendants' affirmative defense); *Acosta v. City of Costa Mesa*, 718 F.3d 800 (9th Cir. 2013) (court required to follow jury's implicit finding where same facts form the basis for legal claims and equitable claims). However, in *Acosta*, the Plaintiff brought an as-applied claim for damages, which provided him with an independent right to a jury. *Acosta*, 718 F.3d at 810. This case is also distinguishable from *Hardwick*, in which Court specifically declined to decide whether the affirmative defense of mental incompetence raised a legal issue for which a party was entitled to a jury trial as a matter of right. *Hardwick*, 118 F. Supp. at 488.

Here, Plaintiffs request only equitable relief in the form of a declaratory judgment that

Defendants violated their First and Fourteenth Amendment rights by denying media access to the Prisoner Plaintiffs, and injunctive relief prohibiting Defendants from further denying in-person interviews. Plaintiffs also ask for attorneys' fees pursuant to 42 U.S.C. § 1988, but assert that these are costs, not damages. Defendants do not dispute that the relief Plaintiffs seek is purely equitable. Defendants simply state that their "affirmative defenses implicate legal issues," but do not point to any specific affirmative defense to explain how it raises a legal issue. For these reason and those stated above, the Court concludes that Defendants do not have a federal right to a jury trial in this case. Plaintiffs' Motion to Strike the Jury Demand (ECF No. 46) is **GRANTED**.

## V. CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Reconsideration (ECF No. 40-1) and Motion to Compel (ECF No. 51) are **DENIED**, and the Motion to Strike (ECF No. 46) is **GRANTED**.

**IT IS SO ORDERED.**

\_\_9-21-2017\_\_
**DATE**

EDMUND A. SARGUS, JR.
**CHIEF UNITED STATES DISTRICT JUDGE**